WATSON HAM, as Administrator, etc., Appellant, *v.* EDMUND H. VAN ORDEN, Trustee, etc., Respondent.

The will of W. gave his money and securities remaining after payment of debts, etc., one-half to his son E., one-fourth to his daughter J., and one-fourth to E. in trust, to pay the interest annually to the testator's son W. during life, and after his death the same to be divided equally among his children if he left any him surviving ; if he left no child or children him surviving, then the one-fourth was given to E. and J., in equal proportions. *Held,* that E. and J. took an estate in expectancy in the one-fourth held in trust for W. (the son) (1 R. S. 723 § 9), which was alienable. (1 R. S. 725, § 35.)

The testator's son W. died leaving no issue. In an action brought by J. to recover her portion of the trust estate, it appeared that after the death of the testator, the three children met together, settled and set apart the amount of the trust fund, and E., as trustee, received the securities and money so set apart, and as the referee found " as part of the agreement for the final settlement of the affairs of the estate and the division of its assets," J. and E. executed and delivered to their brother W. an instrument in writing, whereby, for the expressed consideration of one dollar, they did "jointly and severally release, dis-

charge and convey " unto him all their " right, title and interest, claim and demand of, in and to the trust fund given and bequeathed " by the will of their father. *Held*, that the finding showed a good and sufficient consideration for the instrument; and that it was valid and effectual to transfer plaintiff's interest in the trust fund.

Also *held*, that even had there been no consideration, the instrument having been executed, as was found, voluntarily and without fraud, was valid as a gift.

(Argued January 28, 1881 ; decided March 1, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made December 4, 1880, affirming a judgment in favor of defendant, entered upon the report of a referee.

This action was commenced by Jane C. Ham, and she dying, was continued by Watson Ham, as her administrator. The complaint states the death of one Wessel T. Van Orden in January, 1871, leaving a will which was duly admitted to probate, and contained among others these words ; "I give, bequeath and direct as follows : that all my mortgages, bonds, notes and money remaining, after paying my just debts, funeral expenses, and the legacies heretofore mentioned, be divided and disposed of as follows : I give and bequeath unto my said son Edmund H. Van Orden one equal undivided half part thereof, I also give and bequeath unto my said son Edmund H., one equal undivided fourth part thereof. In trust nevertheless to be invested by him upon good security and to pay the interest on the same annually to my son Wessel T. B. Van Orden during his natural life (except thirty dollars annually hereinafter bequeathed to my wife), and after the death of the said Wessel T. B. Van Orden the same to be divided equally among the child or children of said Wessel T. B. should he leave any him surviving : In case the said Wessel T. B. shall leave no child or children him surviving, then I give and bequeath the said one-fourth part of my mortgages, bonds, notes and money unto my son Edmund H.; and my daughter Jane C., in proportions, share and share alike. I give and bequeath unto my daughter Jane C. (wife of John

Ham) the remaining one equal undivided fourth part thereof :'' that the defendant qualified as executor, accepted the trust created by this will, and took into his possession the mortgages, bonds, notes and money so bequeathed to him in trust, and has ever since acted as such trustee ; that on the 11th day of August, 1877, Wessel T. B. Van Orden, named in the clause of said will above recited, died without issue, and thereupon the said Jane C. Ham became entitled to one-half of the said one-fourth part of said mortgages, etc., so bequeathed in trust to the defendant ; but although demanded of him, he has refused to pay or transfer it, or any portion of it,. to her. The relief demanded is appropriate to these averments. The defendant by answer set up that Jane C. Ham (the then plaintiff), on or about the 21st day of February, 1871, for a valuable consideration did in writing release, discharge and convey unto Wessel T. B. Van Orden, " the *cestui que trust* and beneficiary named in said complaint, all the right, title, claim and demand of the said plaintiff, Jane C. Ham, of, in and to the trust fund given and bequeathed . by the last will and testament of Wessel T. B. Van Orden, first named in said complaint, for the use and benefit of said Wessel T. B. Van Orden (the said *cestui que trust* or beneficiary) in the execution of which said conveyance, release or assignment the said defendant Edmund H. Van Orden· joined in his individual capacity, and not as trustee, and in like manner released, discharged and conveyed his interest in said trust fund, whereupon said Wessel T. B. Van Orden became seized and possessed in his own right of said trust fund mentioned in said complaint and of the whole thereof," subject to certain contingencies not now important; " that on the 20th of November, 1871, the said Wessel T. B. Van Orden, for a valuable consideration, by an instrument in writing, assigned and transferred unto one Gilbert R. Spaulding, his heirs, etc., the sum of $9,800 of said trust fund, to be paid to him within three months after the death of said Wessel T. B. Van Orden ; that at the time of making such last-mentioned assignment the said Spaulding relied upon the release and conveyance hereinbefore firstly set forth, the same being recited in full in the assignment to said

Spaulding, and in consideration thereof, and in the last above-mentioned assignment, said Spaulding released and discharged the said Wessel T. B. Van Orden from an indebtedness then due and owing from said Wessel T. B. Van Orden to said Spaulding, amounting to a sum greatly in excess of said sum of $9,800; that afterward and on or about the 6th day of January, 1877, said Gilbert R. Spaulding, for a like consideration, duly sold, assigned and transferred and set over all his right, title and interest of, in and to the said trust money, funds and property, unto the above-named defendant, individually and not as trustee, whereupon he became and still is the lawful owner and holder of said trust money fund and property to the extent of $9,800." The defendant also by his answer set up that Wessel T. B. Van Orden died on the 11th of August, 1877, leaving a will which, upon notice to the plaintiff, Jane C. Ham, was duly admitted to probate, and by which the said Wessel devised to his nephew, W. T. B. Van Orden, Jr., all his real and personal property of every name and nature, and appointed this defendant executor of said will, and he as such qualified and received letters testamentary under the same ; that the said Wessel T. B. Van Orden, Jr., is still living. He also denies any indebtedness to the plaintiff individually or as trustee. To this answer the plaintiff replied, denying that any consideration was given to her for the release aforesaid, or that it was delivered to Wessel by her direction or assent, or with her knowledge, and averring that " it was procured by her brother, the said Wessel T. B. Van Orden, deceased, and the defendant herein, to be signed by her, by fraud, deception, undue influence, coercion and connivance on their part," stating the particulars thereof, and that she was thereby induced to sign the same.

By consent of the respective parties the issues in the action were sent to a referee to hear and determine, who made a report in which he stated the facts in regard to the death of the first Wessel T. B. Van Orden and the provision of his will substantially as above set out, and further, so far as is material to any question arising on this appeal :

" that on the 21st day of February, 1871, the said three children of the testator "¹ (Jane C. Ham, the plaintiff, Wessel, the beneficiary, and Edmund H. Van Orden, the defendant) " met together and settled and determined the amount of the mortgages, bonds, notes and money belonging to his estate, remaining after making the payments specified in the will, and the amount of the trust fund to be disposed of as above specified; that the amount of said trust fund was ascertained to be, and was settled and agreed upon at the sum of, $19,806.99; that that amount was agreed upon and set apart as, and for said trust fund, and the defendant accepted said trust and received the securities and money so set apart as such trust fund. That upon the said 21st day of February, 1871, *and as a part of the agreement for the final settlement of the affairs of the estate and the division of its assets,* the said Jane C. Ham and defendant executed an instrument in writing, of which the following is a copy, and delivered the same to their brother, Wessel T. B. Van Orden, mentioned therein, to wit:

'For and in consideration of the sum of $1, to us in hand paid by Wessel T. B. Van Orden, we do hereby jointly and severally release, discharge and convey unto said Wessel T. B. Van Orden all our right, title, claim and demand of, in and to the trust fund given and bequeathed by the last will and testament of Wessel T. B. Van Orden, deceased, for the use and benefit of said Wessel T. B. Van Orden.

Dated *February* 21, 1871.

EDMUND H. VAN ORDEN.<br>JANE C. HAM.'

" That said instrument was executed freely and voluntarily on the part of said Jane C. Ham, with full knowledge of its contents, and without any fraud, deception, undue influence, coercion or conspiracy on the part either of said defendant or Wessel T. B. Van Orden, his brother, inducing him thereto. That at the time of the death of said Wessel T. B. Van Orden, first above mentioned, and at the time of the execution of said instrument by said Jane C. Ham and defendant, their brother, said Wessel T. B. Van Orden, second above-mentioned,

was unmarried and had no child or children, and that he died on the 11th of August, 1877, leaving no child or children him surviving, and that from the time of the death of his father up to the time of his own death, no child was born to him." And as conclusions of law the referee found:

"1. That in and by the provisions above quoted of said last will and testament of Wessel T. B. Van Orden, first, the said Jane C. Ham, upon his death, took an estate in expectancy, or future estate in said trust fund, which was alienable.

"2. That in and by said instrument above set forth, executed by said Jane C. Ham, she assigned and transferred said estate and all her right, title and interest in and to said trust fund to her brother, Wessel T. B. Van Orden, second.

"3. That at the time of the commencement of this action and at the time of her death the said Jane C. Ham had no right, title or interest whatsoever in and to the said trust fund.

"4. That defendant is entitled to judgment dismissing the complaint with costs." Upon this report judgment was entered.

*O. M. Hungerford* for appellant. The finding that the release was "freely and voluntarily" executed and as a part of the agreement for the final settlement of the affairs of the estate is not conclusive on this court. (35 N. Y. 587–595.) The release was not binding as a gift, Mrs. Ham not having been apprised of its effect. (20 Md. 151.) The referee erred in going beyond plea and evidence. (1 Ves. 628; 2 Sch. & Lef. 500; 2 Johns. Ch. 34–43; 8 Cl. & Fin. 374; 1 Harris & Gill, 175, 203.) Defendant having by his answer sought to support the transfer as a sale for a valuable consideration cannot sustain it as a gift. (8 Clark & Fin. 370, 401; 3 Md. Ch. 401; 1 Harris & Gill, 196, 203.) The transaction was not complete so as to be binding as a gift. (*Hoghton* v. *Hoghton*, 11 Eng. L. & Eq.) Sales of a reversionary interest to be valid must be for a fair value. (63 N. Y. 657; Story's Eq., §§ 336–337 b.) There was concealment and imposition. (L. R., 5 Eng. & Irish App. 618.) Equity will not tolerate a transaction based on a "badge of fraud." (16 Wend. 473; 11 Wheat. 213; 1 Johns.

Ch. 478; 78 N. Y. 388; 8 Cow. 434; *Ahern* v. *Hogan,* 1 Drury's Ch. 310.) The quit-claim was in no sense any " part of the settlement." (4 Russell, 36, 42, 54.) The finding that the quit-claim was part of the settlement being based simply on Wessel's threat rests on a palpably unfounded and untenable claim. (44 Barb. 652; 78 N. Y. 336.) The quit-claim then was extorted and coerced. (23 Kans. 476; L. R., 7 Ch. App. 104, 108.) Settlements between members of the same family must be conducted with all " imaginable fairness." (1 Sch. & Lef. 226; 3 Swanst. 470; 2 DeG., J. & S. 28, 42, 119; 2 Patterson's Scotch App. 173.) We cannot speculate on what Mrs. Ham might have done had a full and fair disclosure been made. (7 H. of L. Cas. 750, 759.) Wessel had no right to assume that the fact of his indebtedness was immaterial if by any possibility it could have influenced his sister. (2 Bligh, 348; 1 DeGex, McN. & G. 707; 2 Pat. Scotch App. 1735.) There were no disputes and so no case was made for a family compromise. (4 Russell, 53–55; 8 Cl. & Fin. 347, 401.) Had there been it must have been reasonable and there must have been a full disclosure. (2 DeG., F. & J. 359; 3 Swanst. 472; 3 Cow. 568; L. R., 20 Eq. Cas. 708.) The quit-claim was void if the signing of it was induced by threats. (6 H. of L. 48, 49; 45 Ga. 598; 11 Eng. L. & Eq. 34, 138; 31 Barb. 33; 57 id. 453; L. R., 7 Ch. App. 338, 104–8; 2 Atk. 58–60; 3 Wall. 66; 3 Cow. 521; 2 Sch. & Lef. 484–486; 23 Kans. 476; L. R , 2 App. Cas. 215–232; 2 White & Tudor, part 2, pp. 1195–1250; 32 Beav. 628, 631; 31 N. J. Eq. 600; 71 N. Y. 158–159.) The attorney employed by the estate should have seen that Mrs. Ham understood the transaction. It was for defendant to show she had competent and independent advice. (30 Beav. 251; 23 id. 291; 15 id. 234, 244, 248; 32 id. 631, 632; 2 Y. & C. 117; L. R., 7 Eng. & Irish App. 463–471; 5 H. of L. 663; 8 Cl. & Fin. 381, note; L. R., 1 Ch. App. 252, 257, 261, 262; 7 id. 338–339; 33 Md. 193; 8 Irish Eq. 632; 11 id. 386, 404, 407; *Gibson* v. *Russell,* 2 Y. & C. 116; 11 Hun, 413; L. R., 2 Ch. App. 544; 6 Ves. 278; L. R., 1 Eq. Cas. 541; L. R., 2 Ch. App. 62; 7 id. 104–108; 3 Cow. 573.)

Mrs. Ham's rights were fixed under the will and exhibits and if induced by mistake, ignorance, threats, art, deception or in any way to give up a portion of her property on a compromise, this court will relieve her. (1 Sim. & Stu. 564; L. R., 5 Eng. & Irish App. 618–623; 73 N. Y. 501; L. R., 2 App. Cas. 232.) The quit-claim does not represent the real transaction, it is unsupported by any proof. (72 N. Y. 400; 71 id. 159; 31 N. J. Eq. 600; 32 Beav. 630.) The court will exercise no power in favor of a trustee who turns speculator. (1 Johns. Ch. 478; 78 N. Y. 388; 4 How. [U. S.] 555–557; 82 Ill. 28.) The quit-claim is clear and unambiguous and hence its operation becomes a matter of law. (49 N. Y. 395; 89 Penn. St. 346; 20 Barb. 527; 31 N. J. Eq. 599–601.) The concluding words of the quit-claim should not, under all the circumstances, be construed as surplusage. (42 Penn. St. 386; 44 Cal. 253; 21 Pick. 507; 30 N. J. L. 510–518.) Intention has no place as a matter of inquiry. (25 N. J. Eq. 413; 5 Den. 694–702; 5 Cush. 63; 31 N. J. Eq. 600–601; 10 Pet. 211–213; 2 Pick. 365; 65 N. Y. 461.) Neither the fund itself nor any particular interest in it is quit-claimed. (1 N. Y. 242–247; 11 How. [U. S.] 322; 21 id. 240; 4 Sawyer, 526; 39 Mo. 566; 14 Kans. 148.) Such an instrument as this passes no more than a present right, a title *in esse.* (9 Cow. 18; 3 Wheat. 348; 23 N. Y. 531–532; 2 Barn. & Adol. 278; 2 Curtis, 444; 12 Pick. 46–67.) A quit-claim always implies a doubtful title. (4 Minn. 292; 14 Ill. 305–308.) The instrument was not properly drawn. (65 N. Y. 461; 5 Den. 694–702; 23 How. [U. S.] 127.) Even if value had been paid, or as part of the settlement, it was not available to pass the fund. (30 Mich. 300; 76 N. Y. 452; 11 Wall. 232.) Mrs. Ham had no transferable interest. (7 H. of L. 703; 16 N. Y. 95; 47 id. 396; 67 id. 352; 1 Phil. Ch. 342; *Everitt's Case,* 29 N. Y. 39; *Warner's Case,* 76 id. 133; 71 id. 98; 5 id. 125–134; 3 P. Wms. 300; 63 N. Y. 233; 2 Bland. Ch. 264; 12 Hun, 604; 75 N. Y. 78; 4 Keyes, 346; 30 Ohio, 288; 45 How. Pr. 206; 2 Patterson's Scotch App. 1537; L. R., 4 Eq. Cas. 372.) Defendant should have first surrendered

what he got as trustee and then brought his action as an individual. (3 Pet. 55; 30 Barb. 641; 9 Hare, 222; 3 How. [U. S.] 38; 2 Blackf. 44; 5 Binney, 138–148; 66 N. Y. 555; 18 B. Monr. 466; 17 N. J. Eq. 557; 38 N. J. L. 522–523; 44 N. Y. 240.) The attempt on defendant's part is a mere "scheme," fraudulent in equity. (11 Hun, 413–426; 17 id. 197.) A trustee cannot buy in after he has accepted his trust. (*Davis' Case*, 55 Miss.) This was an executory transaction. The title and possession remained in and with the trustee. (1 T. & R. 445.) It was an incomplete gift at most. (30 Beav. 19–25; 2 Cai. Cas. 183–187; 1 Johns. Ch. 240; 10 N. Y. Weekly Dig. 137; 5 Dana, 107; 35 Ala. 637; 52 N. Y. 368; Leake's Dig. Law of Contracts, 615, note; 44 N. Y. 35; 76 id. 452.) The referee erred in rejecting plaintiff's offer of proposed exhibit two. (Greenl. on Ev., §§ 393–395; 1 Ves. 505; 3 Phil. on Ev. 1227; 16 Johns. 193; 40 Barb. 528; 2 Seld. 272; 23 Kans. 475–476; L. R., 7 Ch. App. 104–108; 2 Sch. & Lef. 484–485; 3 Cow. 572–576; 1 P. Wms. 117; L. R., 2 App. Cas. 232; 1 Sch. & Lef. 222.) The referee erred in rejecting plaintiff's offer to show Mrs. Ham's subsequent declarations offered and intended to illustrate her understanding of the real object of the quit-claim, and to show also how she understood Wessel in the matter of the Spaulding indebtedness. (32 Beav. 628; 2 Ala. [N. S.] 571, etc.; 5 Barb. 543–545; 8 Watts & Serg. 96–98.) Such declarations, under a plea of fraud, are *dehors* the whole paper. (5 Barb. 543–545; 13 Gratt. 705–715; 8 Watts & Serg. 96–98.) The quit-claim, having been executed as a favor, although absolute on its face, cannot be sustained. (5 Barb. 543–545; 1 Busbee's [N. C.] Eq. 273; 2 Ves. Sr. 626; 18 B. Monr. 452–456; 29 Cal. 490; 1 Dallas, 426; 17 Hun, 197–198, etc.) The court relieves against such deeds when relied upon as absolute, on the ground of fraud, and equity allows evidence *dehors* the deed, as tending to show the real object. (2 Ala. [N. S.] 596, 671; 60 N. Y. 397; 13 Cal. 126–127; 46 id. 648; Otto, 336.) Fraud in equity can be traced by circumstances. (45 Barb. 448; 61 Ala. 281; 58 Miss. 201; 44 Ind. 211; 46 Ill. 256–257.)

Mrs. Ham's declarations would also illustrate her understanding of the quit-claim and perhaps the motive that impelled her to sign it. (24 Conn. 94; 2 Molloy, 361; L. R., 2 App. 215, 232.) The referee erred in rejecting plaintiff's offer of a copy clause in a proposed decree drawn by Lawton, which clause was evidently intended to confirm the quit-claim. (6 Binney, 481; 4 Beav. 144; 1 Ves. Sr. 505; 22 Beav. 628–630.) It tends to prove that Wessel and defendant, if not Lawton, felt that some confirmation of the release was in order. (8 Hare, 262; 8 How. [U. S.] 206; 4 Brown's Par. Cas. 241–242; 6 N. Y. 274.) The referee erred in rejecting the letter offered by plaintiff, written by Lawton, to Ham. (32 Beav. 628–630.) It was also error to reject the letters written by Ham to defendant at Mrs. Ham's request. (47 Ga. 68.) The referee erred in permitting defendant to testify as a witness against the administrator. He was not competent under the 829th section of the Code. (67 N. Y. 495; 72 id. 602; 10 Weekly Dig. 6–7.)

*Rufus W. Peckham* for respondent. If there were any uncertainty as to the meaning of the language of the release, the surrounding circumstances may properly be looked at. (*Griffith* v. *Hardenburgh*, 41 N. Y. 464; *Knapp* v. *Warren*, 57 id. 668; *White* v. *Hoyt*, 72 id. 505.) The words of the conveyance should be taken most strongly against the grantor. (*Hathaway* v. *Power*, 6 Hill, 453.) The estate of Mrs. Ham was a vested remainder at the time she conveyed it. (*Lawrence* v. *Bayard*, 7 Paige, 70; *Sheridan* v. *House*, 4 Abb. Ct. of App. 218; *Moore* v. *Littel*, 41 N. Y. 66; *Woodgate* v. *Fleet*, 44 id. 1; *Smith* v. *Scholtz*, 68 id. 41, 61.) If there is a present capacity to take, the estate is vested in interest, though it may not be certain that such person will be living or qualified to take at the actual cessation of the prior estate. (*Vanderheyden* v. *Crandall*, 2 Den. 1, 18; *Matter of Trustees, etc.*, 31 N. Y. 574, 589.) With but one exception, not important here, the same rules apply to the descent and alienation of personal property as apply to real property. (1 R. S. 773, §§ 1, 2.)

Future estates are vested or contingent, but are also expectant. (1 R. S. 722, § 7 *et seq.*) Expectant estates (in which are included both vested and contingent remainders) are by the express terms of the statute made descendible, devisable and alienable, in the same manner as estates in possession. (1 R. S. 725, § 35; 2 id. [6th ed.] 1103, § 35; *Savage* v. *Pike*, 45 Barb. 464, 469; *Smiley* v. *Bailey*, 59 id. 80.) Contingent remainders, even by the English common law, are transmissible, like vested interests. (*Winslow* v. *Goodwin*, 7 Metc. 363, 377; *Gardner* v. *Hooper*, 3 Gray, 298, 403; *Stover* v. *Eycleshimer*, 3 Keyes, 620; 68 N. Y. 41, 61; *Miller* v. *Emans*, 19 id. 384.) As the conveyance operated immediately as an executed, as distinguished from an executory, instrument, no consideration was needed to support it. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518, 683; 2 Bl. Com. 441; *Bunn* v. *Winthrop*, 1 Johns. Ch. 329, 336; *Richardson* v. *Mead*, 27 Barb. 178; *Robertson* v. *Gardner*, 11 Pick. 146–150; *Soverlye* v. *Arden*, 1 Johns. Ch. 240; *Cruger* v. *Cruger*, 5 Barb. 225, 235.) The decision of the referee was sufficiently favorable to plaintiff, in holding that the burden was on the defendant of showing that the instrument, properly acknowledged, was in its nature and effect understood by the party signing it. (*Cowee* v. *Cornell*, 75 N. Y. 91–99.) The foundation of equitable jurisdiction in cases of a hard, an unconscionable bargain, and advantage taken of the necessities of an heir, lies in "weakness on one side, usury on the other, or extortion or advantage taken of that weakness." (L. R., 8 Ch. App. 484, *supra;* L. R., 2 id. 542; 1 Story's Eq. Jur., §§ 339, 340, note.) The referee was correct in his rulings in relation to the admissibility of the evidence of defendant, limited as it was by the referee. (*Cary* v. *White*, 59 N. Y. 336; *Brague* v. *Lord*, 67 id. 495; *Kraushaar* v. *Meyer*, 72 id. 602.)

DANFORTH, J. So far as the questions of fact involved in this case depend upon conflicting evidence, the findings of the referee cannot be reviewed here. They have been examined by the Supreme Court and found satisfactory. As to

those questions, therefore, the judgment appealed from is final. Among those most material to the plaintiff's case is the issue raised by the answer and reply involving the validity of the release or quit-claim executed by Mrs. Ham. That it was, in fact, executed by her and by her delivered, is apparent. Was its execution and delivery induced by fraud or other influence set out in the reply? If there is evidence tending to show that it was, there are many circumstances to the discredit of the plaintiff's principal witness, and other circumstances and the testimony of witnesses to the contrary. By the latter the referee and General Term have been convinced. The appellant's counsel, however, lays much stress upon the fact that the pleading or answer of the defendant alleges, for the execution of the release, " a valuable consideration," and contends that neither the evidence nor the finding of the referee is to that effect, and more than this, that it was, in fact, disproved. But in what respect does the finding of the referee differ from the allegation of the defendant? He finds a good and sufficient consideration, one moving to the benefit of the plaintiff and of substantial value. He was not asked for other or further findings, as for instance in what way the agreement for the adjustment or settlement of the estate was for her advantage. It accords with nature and the fitness of things, that a speedy adjustment of the rights of several persons in property should be made; and as in this case the questions were between brothers and sister, it is not difficult to see that each might desire, by a fraternal arrangement, to prevent controversy and dispute over the estate of their father, and put an end to doubt or indisposition before it widened into strife and enmity. The release recites a consideration of $1; the pleader averred a valuable consideration; the referee finds that it took its place in the " final settlement of the estate and the division of its assets." The plaintiff by no means shows that it was without consideration, but urges, in the language of one witness, " that no money or property was transferred, or consideration of a pecuniary or valuable character given when the

paper was signed." This was matter for the trial court, and with other evidence to be considered. Upon the whole the conclusion was expressed in the finding I have referred to. It is quite sufficient. It is well settled also that the acknowledgment of the receipt of the consideration expressed in a deed is open to explanation (*McRea* v. *Purmort*, 16 Wend. 469), and that it may be resorted to even to uphold a conveyance when attacked by creditors, even if it discloses a different consideration than the one alleged. (*McKinster* v. *Babcock*, 26 N. Y. 378.) There is also evidence to sustain the finding.

But assuming it to be a gift, I find no ground of invalidity. If there was no fraud or deceit, no unfairness practiced against the giver, why should it not stand? The interest described and intended to be transferred had been a voluntary gift to her made by the father at his pleasure, subject to conditions — the death of Wessel without children — and liable to be defeated if he had issue. She had the same right to do with it as she chose — bestow it upon her brother as a favor, or make it a factor in the adjustment of the estate or its amicable division. The argument submitted by the appellant's counsel upon this branch of the case is well prepared and fortified by authorities carefully brought together. It was fitted for a different forum, where the facts could be considered and placed one against the other; but it enters a field of inquiry over which we have no jurisdiction, for our examination of the evidence, even in the light of his discussion, discloses no finding without evidence in its support, and as to the one above referred to and chiefly drawn in question, there is, I think, abundant and satisfactory proof.

The next question presented by the appellant relates to the scope and effect of the release and quit-claim. It is, no doubt, void if the plaintiff had no property in the thing released or conveyed. But it was otherwise with the plaintiff. The property which forms the subject of the legacy was, by the terms of the will, separated from the general estate for the benefit of the legatees, the interest to be paid to Wessel during his life, and upon his death without issue, one-fourth of the property

itself given to the plaintiff. It does not seem necessary to de-
termine whether an interest at once vested in her, or whether
time and the happening of the specified event were of the sub-
stance of the gift, and prevented it from vesting until the event
happened. In either case, she acquired an interest (2 R. S.
723, art. 1, tit. 2, part 2, chap. 1, § 10); although the right to
possession was postponed to a future period and depended upon
the contingency of the death of Wessel without children. This
did not prevent the creation of the estate, but rendered it liable
to be defeated. (Art. 1, chap. 1, tit. 2, part 2, vol. 1, R. S.
725, § 31.) It was an estate in expectancy (§ 9, p. 725, id.),
however, and could not be destroyed by any alienation or other
act of Wessel or his trustee (§ 32, id.), and upon his death
without children would become absolute in the plaintiff. It
was therefore alienable by her to the same extent as if in pos-
session (§ 35, id.), and whether it be deemed vested or con-
tingent. (*Moore* v. *Littel*, 41 N. Y. 66; *Sheridan* v. *House*,
4 Keyes, 569; *Woodgate* v. *Fleet*, 44 N. Y. 1.) These
rules apply although the property involved is personal and not
real. (1 R. S. 773, §§ 1, 2, tit. 4; chap. 4, part 2, tit. 3.) It
seems to us also that the instrument executed by the plaintiff
was sufficient to transfer to Wessel the plaintiff's interest in
the trust fund, whatever it was. It must be noticed that by
the will of her father the plaintiff was twice remembered. The
same clause which gave her an interest in the trust fund also
gave to her absolutely and at once, one-fourth of the whole
body of that class of property from which the trust fund was
to be taken. It was therefore to be expected that in describ-
ing the interest intended to be transferred, she should speak of
" the trust fund "; and so the release or quit-claim was drawn
in view of that fact, and to distinguish between the two pro-
visions. Such is its language and effect. The release is
" of all title, claim and demand of, in and to the trust fund
given and bequeathed   *   *   *   for the use and benefit of
said Wessel T. B. Van Orden," not in the bonds and mort-
gages, etc., from which that fund is to be taken; thus leaving

no room for doubt as to what was intended. The conveyance is of all her interest in that fund.

It is also urged that the transaction indicated by the release is void as against public policy — " a fraud against the ancestor." This is not apparent. The parties were *sui juris*, and the court cannot modify a gift or restrain by limitations the use of the testator's bounty. It may be that he intended, as the appellant claims, " to stint " one child for the benefit of the others. If so, it would not be unnatural for them to make such division as would wipe out the inequality, or to do what they liked with their own. But if the testator's object was to withhold the property from a use not agreeable to his judgment, as suggested by the appellant's counsel, it has found no expression in his will; and what he omitted the court can neither formulate nor supply.

Much of the evidence on which the plaintiff relied was drawn from the defendant; and her counsel makes the further point that he was incompetent as a witness, at the same time coupling with it the assurance " that to reverse on that ground would be to shut out much that sheds light upon the transaction as a coercive, doubtful and inequitable " one. It is not usual for a party upon appeal to object to the competency of a witness called and examined by himself before the trial court; yet it is so here. The defendant, at the outset of the trial, was the first witness. He was called by the plaintiff and examined and cross-examined, and thereupon the plaintiff rested. He was subsequently recalled and examined in his own behalf. The objection now made is general, that he was not competent under section 829 of the Code. He is not thereby rendered incompetent for all purposes, even in actions by administrators, but only " as to personal transactions or communications between the witness and the deceased person." The learned counsel points to no exception which brings up a violation of that rule, and a careful reading of the extended evidence leads to no discovery of such a case. On the contrary, in various instances the referee excluded evidence when bordering upon it, and in more than one ruling declared that when-

ever offered it would be excluded. There was watchfulness to avoid infringing it in spirit or in letter; and this desire was also shared by the defendant, for the appellant's counsel now says: "By dint of evident intermediation from counsel the defendant sought to keep every thing out that he said to Mrs. Ham or she to him." Nor does the learned and ingenious counsel now indicate a ruling in this respect where error occurred.

There are other objections made, resting upon exceptions to evidence. They have been examined, but appear to be without force. There are none which affect the merits of the controversy, or which, even in actions at law, would require a new trial. The hearing was had before an experienced referee, conducted by expert and learned counsel, and the result of our examination is that the judgment rendered by the referee and approved by the General Term stands upon no error. It should therefore be affirmed.

Judgment affirmed, with costs.

All concur.

Judgment affirmed.