### BELL *et al. v.* BUMSTEAD *et al.*

(*Supreme Court, General Term, Third Department.* May 21, 1891.)

1. DESCENT AND DISTRIBUTION—PROOF OF LEGITIMACY.

In an action to recover an interest in real estate wherein plaintiffs' title turned upon the legitimacy of their father, they testified to the fact that he was accustomed to speak to their alleged grandfather as "father," and that they were accustomed to call him "grandfather," which testimony was corroborated by others, and another witness testified that the alleged grandfather used to call plaintiffs' father his son. *Held,* that the testimony was sufficient to justify the submission of the question of the legitimacy of plaintiffs' father to the jury; the declaration of a father that a person is his child or son being taken to mean, *prima facie,* a legitimate child or son.

2. WITNESS—COMPETENCY—TRANSACTION WITH DECEASED PERSON.

Upon the issue of the legitimacy of a person through whom plaintiffs claim title to real estate, they were allowed to testify as to the declarations of the deceased putative father of such person, which evidence defendants objected to as "hearsay and incompetent," but not as inadmissible under Code Civil Proc. N. Y. § 829, excluding testimony of one party to a transaction, when the other is dead. *Held,* that the objection was not sufficiently specific to apprise the court and plaintiffs that it was directed to the statutory incompetency of the witnesses, and was therefore not available.

Appeal from circuit court, Rensselaer county.

Action by Margaret Bell and Jennie Hindell against William Bumstead, Jr., impleaded with others. From an order denying defendants' motion, founded on the judge's minutes, to set aside a verdict in favor of the plaintiffs, and for a new trial, defendants appeal. The action was originally brought by these plaintiffs and Elizabeth Gibbons to recover three-twelfths of certain real property described in the complaint. Pending the action Elizabeth Gibbons died, leaving a last will and testament, in and by which she devised all her real estate to the plaintiff Jennie Hindell. On the trial, the jury by the verdict found that the plaintiff Margaret Bell was entitled to recover one-twelfth and the plaintiff Jennie Hindell one-sixth of the premises described in the complaint. The evidence discloses that John McIntosh died seised of the premises in question in 1862, intestate, and that he left him surviving, a daughter, Ellen Toozy, and a son, John J. McIntosh; that after the death of their father Ellen Toozy and John McIntosh divided the land of which their father died seised between themselves; and that Ellen Toozy and John J. McIntosh conveyed their shares to the defendant William Bumstead, who was at the time of the commencement of this action in possession of the lands sought to be recovered therein. The plaintiffs claim title to the lands sought to be recovered as the children and heirs at law of Alexander McIntosh, deceased, whom they allege to have been one of the children of John McIntosh, Sr., and entitled to one-third part of the land of which he died seised; and that on the death of Alexander these plaintiffs, as his children, took his interest in such lands. The principal question raised on this appeal is whether the evidence established that Alexander McIntosh was the legitimate son of John McIntosh, deceased, and whether the evidence offered by the plaintiffs to establish that fact was competent, and properly admitted by the court under the defendants' objections.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*R. A. Parmenter,* for appellants. *James Lynes,* for respondents.

MAYHAM, J. The defendants, at the conclusion of the evidence, moved to nonsuit the plaintiffs on the ground that no sufficient title had been

shown in them or any of them to the real estate in controversy; that there was no sufficient evidence that plaintiffs' father was an heir or legitimate child of John McIntosh. If the plaintiffs' father was the legitimate child of John McIntosh, then the right of the plaintiffs to the land in controversy follows as a necessary legal conclusion, as the undisputed facts show that John was the common source of the title through or under whom both parties claim. Upon this point there is some evidence from which the jury could find that Alexander was the son of John McIntosh, and, while the same is slight, it is enough to raise a question of fact, which we think was properly submitted to the jury. There is undisputed evidence that John had been previously married before his marriage to the mother of Ellen Toozy and John J. McIntosh. This evidence is found in the testimony of Ellen Toozy, one of the children of John by a second marriage; and we think that the jury would be authorized to find from her testimony and that of Thomas McCredie and the plaintiffs that Alexander was his son. McCredie testifies that "the old gentleman used to call Aleck his son, and the wife died before I knew him; and Alexander called John his father." Jennie Hindell, one of the plaintiffs, testifies that she used to call John grandfather, and when her father spoke to John he called him "father," and that after her father's death she used to visit John, and call him grandfather; and Mrs. Bell's testimony is to the same effect; and the testimony of the last two witnesses is in part corroborated by that of Mrs. Toozy. Slight as this evidence is, it is entirely uncontradicted, and was, we think, if properly received, sufficient to uphold the verdict of the ury, even if the evidence of a former marriage is too vague and uncertain to prove that relation. Yet the fact that John McIntosh called Alexander his son, together with the other acts and declarations bearing upon that subject, as proved, was sufficient to uphold the verdict of the jury that he was a legitimate son, capable of inheriting his estate. The declarations of John were competent to prove that Alexander was his son. "Such declarations, made by a parent in life, are admissible to establish legitimacy of their issue." 23 N. Y. 104. In *Caujolle* v. *Ferrie*, 23 N. Y. 105, the court quotes with approbation the language of Lord Chancellor ELDON in *Wilkinson* v. *Adam*, 1 Ves. & B. 422, as follows: "The rule cannot be stated too broadly, that the description 'child, son, issue,' and every word of that description, must be taken *prima facie* to mean 'legitimate child, son, or issue.'" And upon this subject the declaration of the father or other members of the family, when proved by a witness competent to testify in reference to such declaration, is admissible. John McIntosh being dead, his declaration made to witness McCredie in his life-time, to the effect that Alexander was his son, is competent upon the question of Alexander's relation to John, and, under the rule above quoted, as to Alexander's legitimacy, (*People* v. *Insurance Co.*, 25 Wend. 205, and cases there cited;) so, too, the testimony of Ellen Toozy as to the acts and declarations of her father tending to prove that Alexander was his son and a half-brother of the witness.

But it is insisted that the testimony of the plaintiffs called as witnesses in their own behalf was improperly received on this subject, and for that reason this order should be reversed. It is apparent from an examination of the testimony given by the plaintiffs that some of it related to personal transactions and communications had with John McIntosh, now deceased, and through and from whom both parties to this controversy seek to establish title; and the important question presented here is, was such testimony objected to, and, if so, was the objection put upon the proper ground to raise the objection to its admissibility under section 829 of the Code of Civil Procedure, under which it is now urged that it was not admissible, and that its admission was error? None of these objections to the conversation between the plaintiffs and their grandfather were specifically put upon the ground that the same related to transactions or communications between a party and a

deceased person from or through whom they claim to derive some title or interest; but most, if not all, of them were on the ground that the testimony offered was "hearsay and incompetent evidence," as we have seen evidence of the statements of a deceased ancestor or member of a family may be properly proved to establish relationship in the same family under proper conditions; and that the objection that such statements are hearsay, does not lie, because that kind of evidence is allowed to prove relationship. Does the addition of the word "incompetent" to such an objection, make the objection available to exclude the testimony of a personal transaction or communications under section 829 of the Code? Evidence of that character, from a witness not under any disability, would not be "incompetent." The evidence itself would be competent, but a witness under the disability specified in that action might not be competent to give the evidence; and the objections were not put upon the grounds of any disability of the witness to testify upon that subject, but of the incompetence of the evidence offered. The rule seems well settled that where there is simply a general objection to evidence the decision of the trial court overruling the same will be sustained, unless there be some ground which could not have been obviated if it had been specified; or unless the evidence called for was, in any aspect of the case, incompetent. *Quinby* v. *Strauss*, 90 N. Y. 664; *Williams* v. *Sargeant*, 46 N. Y. 481; *Somerville* v. *Crook*, 9 Hun, 664. In the last case cited, the plaintiff, who was an attorney, was sworn and examined to establish a claim in his favor for professional service and advice given by him to the defendant's intestate. To this the defendant interposed a general objection. The objection was overruled, and plaintiff gave his testimony of counsel and advice given by him personally to the deceased, and the value of his services so rendered. DANIELS, J., in discussing the admissibility of this evidence, uses this language: "That answer, of course, included the counsel and advice mentioned in the preceding evidence of the witness, and the services performed in the general charge of the business of the deceased. To that extent the witness was not competent to give evidence, because of the decease of the other party, to the communication or transaction. In that state of affairs the law has declared that the surviving party shall not be examined as a witness in regard to any personal transaction or communication between himself and the deceased, (Code, § 829;) and so the answer of the witness violated that prohibition, for it related to the value of services performed personally with the intestate. As to that it was the intent of this provision that the evidence of the survivor should be excluded, and it ought to have been done by the referee. The objection, as it was taken down by the referee, did not specifically mention this, as the reason why the evidence is resisted as improper, but it was noted in the most general form. The terms used are ' objected to by the defendants;' which were insufficient to raise the point that was relied upon to oppose the motion for the confirmation of the report. * * * For that reason * * * the defendants have not placed themselves in a position allowing them to take advantage of the admission of the evidence as improper." In *Ham* v. *Van Orden*, 84 N. Y. 271, it was held that the objection that the witness was not competent under section 829 of the Code is too general, as he is only incompetent to testify as to a personal transaction or communication between the witness and the deceased person. If the examination of the plaintiffs as to personal transactions and communications between them and John McIntosh in his life-time comes within the prohibition of section 829 of the Code of Civil Procedure, then I think, within the declarations above referred to, and numerous others to which reference might be made, the defendants failed in this objection to call the attention of the court and opposite counsel to that objection, and it is too late to do so for the first time on this appeal. It is urged that the word "incompetent" in the objection is broad enough to comprehend and embrace any and all objectionable or illegal evidence, and there-

fore includes the objections arising under section 829; but the difficulty with it is that it is too general to apprise the party or the court of the objectionable feature of the evidence to which it is directed, and therefore unavailing. As there was clearly a question of fact in the case as to whether or not Alexander McIntosh, father of the plaintiffs, was the legitimate son of John McIntosh, through or from whom both plaintiffs' and defendants' grantors claim title, the trial court properly refused to nonsuit the plaintiffs on the defendants' motion. We see no error in the charge of the learned trial court to the jury, or in his refusal to charge as requested by the learned counsel for the defendants. We think the charge as a whole was a correct exposition of the law as applicable to this case, and contained no error or misdirection for which the verdict should be set aside and a new trial granted. Order of special term affirmed, with costs. All concur.