## Winters, Appellant, v. Rimersburg Coal Company.

Argued March 18, 1955. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Vincent M. Casey,* with him *Merritt H. Davis* and *Margiotti & Casey,* for appellants.

*W. Davis Graham,* with him *E. J. I. Gannon, Charles T. Walter, Edmond C. Breene, Hazlett, Gannon & Walter,* and *Breene, Brewster & Breene,* for appellees.

OPINION BY MR. JUSTICE JONES, May 23, 1955:

This is the second time that this litigation has come before us. On the earlier appeal we upheld the lower court's jurisdiction of the defendants: see *Winters v. Rimersburg Coal Company,* 360 Pa. 321, 61 A. 2d 837. The present appeal goes to the merits of the controversy.

The plaintiffs, Charles G. Winters, William Winters and Russell Winters, have appealed from the final decree dismissing their complaint in equity for an accounting and injunctive relief. The defendants are the Rimersburg Coal Company, a Pennsylvania corporation, George Miller, John J. Miller and Harry F. Miller. The latter has been adjudged a lunatic and his interest is represented on the record by the Commonwealth Trust Company of Pittsburgh, guardian of his person and estate.

The prayer of the plaintiffs' amended complaint is that the defendants be enjoined from selling or transferring any of the capital stock of the Rimersburg Coal *Mining* Company, that the defendants be ordered to deliver the capital stock of the Coal Company to the plaintiffs, that the individual defendants be directed to render an accounting of all dividends and profits from the stock, that the corporate defendant be re-

strained from carrying on any business as such, and that a change of corporate name and the capital stock structure of the Coal Company be declared null and void. The defendants filed responsive answers and the matter came on for a hearing before the chancellor who filed an adjudication wherein he found the material facts from which he drew relevant conclusions of law and entered a decree *nisi* dismissing the complaint. The court en banc dismissed the plaintiffs' extensive exceptions to the adjudication and decree *nisi* as lacking merit, confirmed the chancellor's findings and conclusions and entered a consonant final decree from which the plaintiffs have appealed.

The appellants contend (1) that the evidence was insufficient to support the chancellor's findings and (2) that the chancellor erred in holding, on the basis of Section 5 of the Act of May 23, 1887, P. L. 158, 28 PS §322, that the plaintiffs' principal witness (Charles C. Winters) was incompetent to testify because of the lunacy of Harry F. Miller who was a party to the transactions in suit. Bearing in mind that a chancellor's findings, if supported by evidence and confirmed by the court en banc, have the weight of a jury's verdict and will not be disturbed on appeal (*Taylor v. Kaufhold,* 379 Pa. 191, 197, 108 A. 2d 713), the pertinent facts, drawn from the chancellor's findings, may be summarized as follows.

For some time prior to 1940, the Millers were the owners as tenants in common of the Fox Farm in Clarion County, Pennsylvania. On June 5, 1940, they executed a lease of Fox Farm to Charles G. Winters, one of the plaintiffs, for the purpose of strip-mining the underlying coal at a royalty of fifteen cents per ton. The lessee subsequently assigned the lease to the Rimersburg Coal Mining Company which had been incorporated under the laws of Pennsylvania on June

21, 1940. The capital stock of the corporation consisted of one hundred and fifty shares of a par value of $100. Of these shares, ninety-eight were ascribed to the ownership of Charles G. Winters and five shares each to William and Russell Winters. The remaining shares were held in the company's treasury either as unissued or as issued and reacquired stock. However, no certificates for the shares allocated to the Winters were ever actually issued to them, their holdings being represented merely by their indicated initial subscriptions. And, while William and Russell Winters paid some cash on account of their subscriptions, Charles G. Winters gave nothing of value for the shares allotted to him.

Almost from the outset the Rimersburg Coal Mining Company experienced financial difficulties. In October, 1940, the company sold its coal leases (including the lease on Fox Farm) to Wolf-O-Lac Company. Wolf-O-Lac subsequently attempted to strip-mine Fox Farm but, finding the venture unprofitable, abandoned the operation, and in February, 1941, the lease on Fox Farm expired by its terms.

Throughout these transactions, and the ones yet to be recited, the principal figure and negotiator on behalf of the Winters' interests, as well as their key witness at trial, was Charles C. Winters, father of the plaintiff, Charles G. Winters, and brother of the other plaintiffs. It was Charles C. Winters who operated the Rimersburg Coal Mining Company. Moreover, the chancellor found that he was in fact the owner of the ninety-eight shares of the capital stock standing in his son's name. Of the two automobiles which Charles C. Winters owned, title to one was in the name of his son, Charles G. Winters, while title to the other was in the name of a relative. The chancellor held that Charles C. Winters was a real party in interest to the

thing in action and, therefore, incompetent to testify as to his dealings in the premises with Harry F. Miller who was later adjudged a lunatic. But, "in order that the case might be fully decided, without further proceedings," the chancellor admitted in evidence under objection Charles C. Winters' testimony.

In June, 1941, Charles C. Winters negotiated with Harry F. Miller for a new lease on Fox Farm for the benefit of the Coal Company. The lease was signed by Harry F. Miller and George Miller but not by John J. Miller or by the Coal Company. Subsequently, the Millers and the Winters discussed the possibility of a joint venture for the mining and marketing of the Fox Farm coal. On July 29, 1941, Harry F. Miller, Charles C. Winters, Charles G. Winters and Russell Winters met to discuss the situation. As a result of this meeting the stock book of the Coal Company, the new "lease" of Fox Farm and other writings pertaining to the Rimersburg Coal Mining Company were delivered to Harry F. Miller pending the conclusion of a definite agreement between the parties which, when finally arrived at, was to be put in writing. At this time the corporation owned no assets, but the Millers then contributed some $38,000 of capital to finance the strip-mining operation. The corporation's minutes disclose that, thereafter, forty-one shares of stock (later increased to fifty shares) were issued to each of the three Miller brothers. The capitalization of the company was later increased from $15,000 to $100,000 and its corporate name was changed to Rimersburg Coal Company. However, by December, 1941, the corporation was again insolvent. At a meeting held on December 9, 1941, attended by the four Winters, the three Millers and R. E. Crane, R. R. Crane and Jeanne M. Crane, the Winters were offered thirty-seven and one-half shares (i.e., twenty-five per cent) of the stock

of the Rimersburg Coal Company. This offer was refused and, on the following day, Charles C. Winters was discharged as superintendent of the Coal Company's mining operation, a position which he allegedly held as a result of the asserted Winters-Miller agreement to treat the mining operation as a joint venture. By late 1942 all of the stock in the company had become vested in the Cranes who, aided by new capital and credit in addition to the wartime demand for coal, operated the business at a profit. Harry F. Miller was adjudged a lunatic in 1944.

The chancellor confirmed his earlier conclusion that Charles C. Winters was incompetent to testify against the interests of Harry F. Miller, that the second lease of the Fox Farm, executed by Harry F. Miller, was of no effect, and that the plaintiffs had established no binding agreement between themselves and the defendants which would entitle the plaintiffs to the relief sought.

The burden of proof is, of course, on the claimants. Here, it is manifest that, without the testimony of Charles C. Winters, the plaintiffs' evidence is insufficient to support the averments of their complaint. Nor is that deficiency cured by the use of Charles C. Winters' testimony. Assuming, *arguendo,* that he is a competent witness in the premises, the quality of his testimony is plainly inadequate to carry plaintiffs' burden. As the learned chancellor expressly stated in his adjudication,—"The manner in which this witness testified, the contradictory statements in his testimony and the evasiveness of his answers, clearly mark him as an incredible witness." It follows that his competency as a witness is of no present materiality and, consequently, need not be considered. And, since, even with Charles C. Winters' testimony plaintiffs have failed to carry their burden and are therefore not en-

titled to the relief sought, no useful purpose would be served by reviewing the appellants' extensive assertions that the chancellor's findings had no support in the record. It is enough to say that plaintiffs' proofs did not sustain their allegations.

The decree is affirmed at the appellants' costs.