*Collins *et al. v.* McCanless.

(*Nashville,* December Term, 1942.)

Opinion filed April 3, 1943.

---

*This case reprinted and annotated in 145 A. L. R. 1380.

MEACHAM & MEACHAM, of Chattanooga, for complainants.

HARRY PHILLIPS, Assistant Attorney-General, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought to recover part of an inheritance tax paid under protest. Part of the relief sought was granted. Both sides appealed.

The complainants' intestate, N. J. Collins, died in Chattanooga in February, 1941, leaving a considerable estate. Among other assets, there were found in safety deposit boxes rented by him $115,000 in bonds of various sorts. After his death, the attorney for the administrators prepared the report for the Commissioner of Finance and Taxation required by the inheritance tax laws. In this report there were included the $115,000 of bonds aforesaid. The report was signed and sworn to by the administrators, a son and daughter of the intestate.

After this report was filed and after she was advised thereof, the widow of the intestate made complaint, claiming a one-half undivided interest in the bonds mentioned had been given to her by her husband in the fall of 1938 and that so much of the estate reported as was represented by her interest in the bonds mentioned was not subject to the inheritance tax. There is no contention on the part of the State that the gift of the bonds, if made as claimed by the widow, was made by the husband in contemplation of death. The Commissioner of Finance and Taxation, however, rejected the claim of the widow and the claim of the administrators made in an amended report respecting this gift and ruled that all the bonds were a part of the intestate's estate and should be included in fixing the basis for calculation of the inheritance tax. The contention of the Commissioner is that there was no such delivery of an interest in the bonds by the deceased to his wife as was necessary to complete a gift.

The widow testified that in the fall of 1938, in a conversation with her husband, he told her that he was giving her one-half of his bonds. She said that on the next night, which was Sunday night, all the family, according to custom, had gathered at her home. Mr. and

Mrs. Collins had several children, some of them married, and it was the habit of the family to meet at the home of the parents each Sunday night.

Mrs. Collins testified that on this particular night, in the presence of all the children, her husband announced to them, "Your mother is now a rich woman. I have given her half of my bonds." She said that she then told her husband that she would rent a box of her own at the bank to keep them, but he told her that such course was unnecessary, that he already had two boxes, and she could keep them in his boxes. She said that she replied that that was all right with her.

This testimony of the widow is confirmed by that of all the children present. They relate the incident substantially as the mother does and there is no impeachment of any of this proof.

On the next day Mrs. Collins said that she went to the bank with her husband, entered the vault, and he got out the bonds. She said that the coupons were clipped, she clipping them herself, and that she took half of them. She said she deposited some of the coupons in the bank and cashed some of them and spent the money. She further testified that on several occasions she went to the bank with her husband, helped clip the coupons, and obtained her half. That on other occasions her husband clipped the coupons but invariably gave her half of them.

Some of the children testified as to having been with their father and mother when they went to the bank together and as to her getting half of the coupons, depositing part of them and cashing part of them and spending the money.

There is some conflict in the testimony of Mrs. Collins and of the young women who were in charge of the bank vaults as to whether Mrs. Collins herself ever entered

the bank vaults. Collins had boxes in two banks. The custodians at both banks said that their records did not show that Mrs. Collins ever entered the vaults at either bank and one of these young women testified as to having refused admission to Mrs. Collins, when she came on one occasion to put some jewelry in her husband's box, because she had no order from her husband. The boxes were rented in Collins' name and he never indorsed any permit for entry into them by his wife. The wife and children, however, testified that he did give her a key.

Neither Mrs. Collins nor her husband ever made any report of the alleged gift to the Collector of Internal Revenue although the gift was doubtless subject to the federal gift tax.

The attorney representing the Collins estate testified that he prepared the administrators' report for the Commissioner of Finance and Taxation and that when it was prepared he was not aware of Mrs. Collins' claim as to the gifts of half the bonds something over two years before her husband's death. It may be fairly assumed that the son and daughter who signed the report, the administrators, left the matter to this attorney and signed and swore to the paper he prepared for them.

If the gift here had been a gift of all the bonds, under the circumstances we have detailed, the contention of the Commissioner that there was no completed gift would probably be good. Delivery is of course essential to complete a gift and retention by the donor of any dominion and control over the subject matter of the gift is ordinarily fatal to its validity. This court has so held many times. Among our later cases in which the earlier decisions are reviewed may be mentioned *Deitzen* v. *American Trust & Banking Co.,* 175 Tenn., 49, 131 S. W. (2d), 69; *Chandler* v. *Roddy,* 163 Tenn., 338, 43 S. W.

(2d), 397; *Scott* v. *Union Planters' Bank & Trust Co.,* 123 Tenn., 258, 130 S. W., 757. Many of these cases, however, recognize that there may be a constructive delivery.

When we come, however, to consider the gift of an undivided interest in a specific thing, the situation presented is different. There can be no actual physical delivery of an undivided interest in a particular property. If a half of the thing is separated and delivered, there will be a gift of a divided part of the thing, not of an undivided interest in the whole. And many chattels, an animal for instance, would not be susceptible of division and manual delivery of an interest in a living animal would be impossible.

We are not willing to hold that an undivided interest in a chattel or chose in action cannot be the subject of a valid gift. While delivery is necessary to complete a gift, in such a case only a construcutive delivery can be exacted. In other words, as said by this court in *Scott* v. *Union Planters' Bank & Trust Co.,* 123 Tenn., 258, 130 S. W., 757, 764, "when it is once ascertained that it is the intention of the donor to make such a gift, and all is done which is possible under the circumstances in the matter of delivery, the gift will be sustained." This rule was not announced with respect to a gift of an undivided interest but should have a more ready application in such case.

There was nothing inconsistent in the possession of these bonds on the part of Mr. Collins with his gift of a half interest therein. Retaining a one-half interest in the securities himself, it was not incumbent on him to surrender them by way of completing the gift. He was entitled to possession equally with his wife and according to all the testimony she acquiesced in his possession.

We think his possession, therefore, was not solely in his own right but partly as the agent of or trustee for his wife under *Wilson* v. *Wilson,* 151 Tenn., 486, 267 S. W., 364, and *Royston* v. *McCulley* (Tenn. Ch. App.), 59 S. W., 725, 52 L. R. A., 899.

There is no doubt on this record of the intention of the deceased to give his wife a half interest in these bonds. He told her and he announced to the family that he had given her such an interest in the securities. There was a definite agreement between the husband and the wife, after the gift was announced, that the bonds would be kept in his box for the joint benefit of the two. The proof very clearly shows that the husband never thereafter asserted any claim to the whole interest in the bonds but, when the coupons were clipped, always divided the coupons equally between his wife and himself. Such being the facts, we think the gift was complete.

We find very few cases dealing with the gift of an undivided interest in a chattel or a chose in action. None of these cases are quite in point but observations made in some of them are pertinent.

In *Cochrane* v. *Moore,* 25 Q. B. Div., 57, the court considered the gift of a fourth interest in a race horse. The owner of the horse in England "by words of present gift" gave to a friend a fourth interest in this horse, at that time kept in the stables of the trainer near Paris. The owner wrote to the trainer and told the latter about the gift to his friend. Later the owner became embarrassed and made a bill of sale of all his horses, including the horse above mentioned, to one of his creditors. He explained to the creditor at the time about the previous gift of one-fourth interest in the race horse to his friend.

The court discussed at great length the English authorities on the necessity of delivery. They reserved the

questions "whether the undivided fourth part of the horse admits of delivery, or whether on the other hand it is to be regarded as incorporeal and incapable of tradition." The court, however, held, in view of the owner's communication to the creditor about the interest given to his friend before the bill of sale was executed, that the creditor took the horse as trustee for the friend for a one-fourth interest in the animal. For all practical purposes this decision upheld the gift although there was no delivery of the one-fourth interest.

In *Green* v. *Langdon,* 28 Mich., 221, a mortgagee undertook to give to his debtor a portion of the mortgage debt. It was objected that there was no delivery and the gift was for that reason bad. This was rejected and, among other things, the court said: "Whether, if the whole mortgage debt, in the present case, had been the subject, delivery of the note and mortgage, or one of them, would not have been essential to its validity, we need not inquire. In the present case it was but a part of the sum secured by the note and mortgage, and the attempted donation was to the debtors themselves. And it is difficult to conceive how any delivery could have been made. . . . And as all was done that could well be done, under the circumstances, to render the gift effectual, we do not think the act and intention of the donor should be defeated merely because the subject did not admit of an actual or technical delivery."

In *Abegg* v. *Hirst,* 144 Iowa, 196, 122 N. W., 838, 839, 138 Am. St. Rep., 285, the husband purchased a note and mortgage with his own money and had them assigned to himself and wife jointly. He retained possession of them and received the interest until his death. It was held, however, that this was a gift of a half interest in the securities to his wife. Referring to the husband's

possession, the court said: "He, as one of the joint assignees, was entitled to the possession of the instruments. His possession thereof was not in any way inconsistent with the complete vesting of title to a one-half interest in his wife, for delivery to either one in pursuance of the assignment was a complete execution of such assignment."

In *Ham* v. *Van Orden,* 84 N. Y., 257, the court held that an undivided interest in choses in action might be transferred by deed without delivery.

For the reasons stated, we sustain the gift.

█ The chancellor held that exemptions of the value of $450 in the hands of the widow were not subject to the inheritance tax. The Commissioner assigns error upon this action and relies on section 1264 of the Code as follows: "The vesting in a wife of a dower interest upon the death of her husband, or in the husband of an interest as tenant by the curtesy upon the death of his wife or his right to succeed to the personal property of his wife dying intestate leaving no descendants surviving her, or any transfer of property in any other manner by operation of law upon the death of any person, shall be deemed a transfer taxable under this statute."

This section of the Code is taken from chapter 29 of the Acts of the Extra Session of 1929. Prior to this Act the vesting of dower and curtesy were not subject to such tax. *Crenshaw* v. *Moore,* 124 Tenn., 528, 137 S. W., 924, 37 L. R. A. (N. S.), 1161, Ann. Cas., 1913A, 165; *State ex rel.* v. *Clayton,* 162 Tenn., 368, 38 S. W. (2d), 551.

It will be noticed that the Act of 1929 does not expressly deal with exemptions as it does with dower and curtesy. If exemptions are to be held within the purview of this enactment, they must be included within the language "any transfer of property in any other

manner by operation of law upon the death of any person.''

We think the vestiture of exemptions in the widow after the death of her husband is not a transfer within the contemplation of the statute. These exemptions are only given to the head of a family. Code, section 7701. No other man is entitled to them. The head of the family holds them for the use and benefit of the family. *Denny* v. *White,* 42 Tenn. (2 Cold.), 283. He is sort of a trustee. The exemptions cannot be appropriately described as property transferred by operation of law on the death of the head of the family. The family is the beneficial owner during his lifetime—all the while.

It would have been an easy matter for the Legislature, if so minded, to have dealt with exemptions as with dower and curtesy, expressly, by name. We are not inclined to construe the doubtful language used against the taxpayer.

It is urged by the Commissioner that we should defer to a departmental construction of the Act of 1929 holding exemptions subject to the inheritance tax said to have persisted since that statute was passed. While the court does ordinarily defer to a construction of the statute long given to it by those charged with its enforcement, if we are satisfied such construction is erroneous, we are impelled to depart from it.

The chancellor's decree will be affirmed in so far as he held the exemptions not subject to the inheritance tax but otherwise reversed as before indicated. A decree will be entered for the complainants with costs.