Simplex Precast Industries, Inc., Appellant, *v.*
Biehl.

Argued January 7, 1959. Before JONES, C. J., MUS-
MANNO, JONES, COHEN and MCBRIDE, JJ.

*Robert W. Honeyman,* for appellant.

*Ernest E. Heim,* for appellees.

Opinion by Mr. Justice Musmanno, March 16, 1959:

In August, 1955, the Simplex Precast Industries, Inc., plaintiff in this case, entered into negotiations to purchase from L. Charles Biehl, Theodore L. Gey and Arthur W. Gey, individually and trading as Gey Band and Tag Company (hereinafter to be referred to as Gey Band) a tract of land containing 3,069 acres in East Norriton Township, Montgomery County. Although there had been no previous discussion on the subject the plaintiff noted, on receiving the deed, that it impressed an easement for a temporary cul-de-sac on the land in question.

Gey Band owned three contiguous lots which for convenience were termed in the Court below, and which terminology we will follow here, as Lots I, II, and III. The one just mentioned was numbered Lot I. Lot No. II, consisting of 13.792 acres, was located north of Lot I. Lot No. III flanked both Lots I and II on the east and embraced an area of 9.24 acres. In June, 1957, the plaintiff also purchased Lot II from Gey Band. Still later, Gey Band prepared to sell Lot III to Edward G. End and Thomas J. Carney, Jr., individually and trading as Springfield Oil Co. (hereinafter to be referred to as Springfield.) The plaintiff, Simplex Precast, now instituted an action in Equity against Gey Band and Springfield to enjoin the conveyance of Lot III from Gey Band to Springfield. The defendants filed preliminary objections, to which the plaintiff countered with preliminary objections, all of which were dismissed by the Court of Common Pleas of Montgomery County. The defendants then filed separate answers to which the plaintiff made separate replies. In the end, the court entered judgment on the pleadings against the plaintiff Simplex.

Without attempting to individualize the paragraphs in which the several averments were made in the respective pleadings, the contentions of the parties will be epitomized as follows. When Simplex objected to the inclusion in the deed to Lot I of the easement described as a "temporary cul-de-sac," Gey Band replied that this cul-de-sac was required by the authorities of East Norriton Township, and that it would be liquidated when Felton Road, which ran up to, abutted and ended at Lot I, would be extended past the Gey Band property. Felton Road is a 40-foot road which, coming from the south, ends at the northeast corner of Lot I. The cul-de-sac, which, of course, simply means a dead-end street, or a blind alley, constitutes the end of Felton Road and extends on to Lot I in order to provide a turn-around area for traffic coming up to this point. Once Felton Road would be extended there would be no need for the cul-de-sac on Lot I. Felton Road, if extended, would skirt Lots I and II along their eastern borders and provide a thoroughfare accessible, of course, to Lots I and II to the west and Lot III to the east. The extension would actually be on the ground of Lot III.

Simplex says that when it objected to the easement of the cul-de-sac, Gey Band orally promised to extend Felton Road as above indicated and that, therefore, the cul-de-sac was a mere temporary stopgap until the extension was constructed. It was upon that representation, Simplex claims, that it accepted the deed and entered into possession of Lot I. When Simplex later negotiated with Gey Band for the purchase of Lot II, Gey Band "orally agreed with the plaintiff that the said defendants, in consideration of the plaintiff's completing the purchase of the said tract would convey or dedicate the extension of Felton Road at the same width as the existing portion of Felton Road pro-

vided that the plaintiff, or any of its assignees, improves such extension of Felton Road in accordance with Township specification." Fully satisfied with this understanding Simplex purchased Lot II. Later Simplex prepared to sell Lots I and II to willing purchasers when it developed that Gey Band was selling Lot III to Springfield without first having made any arrangements for the extension of Felton Road through Lot III and the contemporary extinguishment of the temporary cul-de-sac on Lot I. This limitation on the title to Lot I became an impediment to the sale of Lots I and II to Simplex's prospective purchasers thereof and accordingly Simplex brought suit against Gey Band and Springfield to prevent the conveyance of Lot III.

Gey Band denied in its pleadings that it had made an oral agreement to extend Felton Road, but it did admit that there had been a discussion with Simplex on the subject. It explained that the discussion boiled down to the proposition that Gey Band would extend Felton Road only if Lot III were so subdivided that each individual lot would have access on Felton Road. Gey Band admitted that it had generally discussed its overall intentions with regard to Lot III, but it had made no unconditional promise.

But, over and above all this, it is Gey Band's position in this lawsuit, that since the alleged discussions or agreements with Simplex were oral, and pertained to land, the Statute of Frauds enters into the picture with a peremptory sword to prevent their enforcement. Ever since that venerable statute was armed with authority to prevent the assertion of verbal understandings regarding title to land, it has been called upon to strike down agreements which were not committed to writing. The laudable purpose of this guardian of truth is to prevent frauds and perjuries. Occasionally,

however, an embattled property owner or prospective purchaser of land, summons the statute to enforce a condition which does not seem to coincide with principles of honesty and fair dealing. In such cases the courts should study the situation involved to make certain that the statute is not being used to perpetrate fraud and perjuries rather than prevent them.

In granting judgment in favor of the defendants in this lawsuit the court below said: "The interest plaintiffs seek to enforce in this action is in the nature of an easement, to wit, a right of way in favor of the general public over a portion of defendants' land. An easement is an interest in land within the purview of the Statute . . . Under the Statute of Frauds, supra, an agreement containing an interest in land . . . cannot be specifically enforced unless such agreement is in writing signed by the party creating the interest."

It would appear that the court below, in pursuing the highway of argument over the Statute of Frauds, blundered into a cul-de-sac all its own. Strangely enough, both the plaintiff and the defendants accompanied the Court into this blind alley of reasoning. In point of fact, the plaintiff's action in this case is not based on an oral promise at all; it seeks the enforcement of rights arising from a written instrument, the deed itself. In reserving only a "temporary cul-de-sac," the deed created a negative easement in favor of Simplex, that is to say, the deed invested Simplex with the right to restrain Gey Band from using its remaining property in such a manner so as to convert the temporary cul-de-sac into a permanent cul-de-sac.

In an excellent treatise on the subject of Equitable Easement, HARLAN F. STONE (later Chief Justice of the United States Supreme Court) said that: "In a proper case, a negative easement may be created by implied grant on the application of the principle that

a grantor cannot derogate from his grant." (Columbia Law Review, Vol. 18, 291-3)

Here the conveyance to the plaintiff was full and complete except for the temporary cul-de-sac. To allow Gey Band to so use its remaining property so as to make the cul-de-sac permanent would be an act in derogation of its grant. By reserving only a temporary cul-de-sac, the grantor necessarily covenanted that it would not make something permanent out of something that was only temporary. Conveying Lot III to Springfield without providing for the extension of Felton Road would bottle up Lot I with the turn-around at the end of Felton Road, a sealing from which there might never in the future be an escape.

Thus it is clear that whether the reservation is regarded as giving rise to a negative easement in favor of Simplex or an implied covenant binding Gey Band from making the cul-de-sac permanent, Simplex here is simply endeavoring to prevent Gey Band from breaching the terms of the deed by impressing on Lot I a permanent blind alley. The rights which the plaintiff here asserts rise from the Deed itself, which is, of course, a written instrument. The Statute of Fraud, therefore, not only does not prevent its enforcement; it stands by to enforce it.

It is true that the deed does not spell out the terms of the alleged agreement between Simplex and Gey Band, but it does specify that the cul-de-sac is to be *temporary* only. Temporary means for a brief period of time, it means transitory, it means limited. On the highway of time, *temporary* is a cul-de-sac, not a limitless boulevard of eternity. The deed from Gey Band to Simplex leaves something to be desired in that it does not describe how temporary is to be the temporary cul-de-sac, and to that extent it presents an ambiguity. Thus, parol evidence is admissible to resolve the am-

biguity. We said in *Morgan v. Phillips,* 385 Pa. 9, 14, that ". . . where a written instrument is ambiguous, either party may produce oral evidence to resolve the ambiguity, such evidence being admitted, not to add to or detract from the writing, but merely to ascertain the meaning of the parties. The authorities so holding are legion."

In *Beck v. Schekter,* 240 Pa. 596, 602, we held: "Had there been no ambiguity in that part of the deed relating to the charge, of course the evidence would have been irrelevant, but this court had decided that the deed in this particular was ambiguous, and for this reason it was open to explanation by parol testimony. . . . We simply say that . . . the evidence offered was not only pertinent and relevant, but material to the issue. When the instrument is equivocal the understanding of the parties at the time of the signing it as to the meaning of the ambiguous and equivocal parts becomes part of the contract, and their declarations at the time are proper to show their understanding of those parts. It is unnecessary to cite authorities in support of this well established rule."

The introduction of parol evidence here would not cause the case to fall within the rule that oral testimony reduces the entire agreement to parol and therefore becomes unenforcible because of the Statute of Frauds. The oral testimony under consideration would be admitted only for the purpose of interpreting and understanding not an executory agreement but an executed transaction.

The parol agreement averred by the plaintiff is not the basis for its lawsuit. It is merely evidence of alleged rights under the Deed, which rights would be entitled to specific performance by a court of equity since the remedy at law for Gey Band's breach of its agreement with Simplex could not, under the circumstances, be wholly adequate to the injured party.

The Springfield Oil Company, the intended purchaser of Lot III, would not have superior equities in its favor which would prevent the relief here indicated. On the contrary, since the Deed gave notice to the world that the cul-de-sac on Lot I, which bordered Lot III, was merely temporary, Springfield is not in a position to complain because of its failure to ascertain what was meant by the "temporary cul-de-sac" on Lot I, and which is the end of Felton Road which also touches Lot III. This provision in the Simplex Deed informed Springfield that its intended grantor, Gey Band, could not use its property so as to convert the temporary cul-de-sac into a permanent one. Springfield should have realized that so long as Felton Street was not extended and remained a dead end in front of Lot I, the cul-de-sac would remain.

We hold that the interests which the plaintiff avers and which it seeks to enforce in equity were created in a writing, that parol evidence is admissible to resolve the ambiguity in the writing and that, therefore, the plaintiff is entitled to the opportunity to prove the facts alleged.

Order reversed; preliminary objections overruled and record remanded for proceedings not inconsistent with this opinion; costs on appellees.