## Bloomsburg Bank-Columbia Trust Company v. Oman

*Charles B. Pursel,* for plaintiff.
*Cleveland C. Hummel,* for defendant.

MYERS, *P.J.,* March 17, 1986—Plaintiff, Bloomsburg Bank-Columbia Trust Company, holds a judgment of record against defendant, Harvey R. Oman, in the amount of $20,480.13.

To review the prior record, in what has been termed phase one of this case, plaintiff bank praeciped the sheriff to levy upon certain items of farm machinery and a motor vehicle. The motor vehicle, which was the only titled item, was determined to be subject to execution. The remaining items of farm machinery, which had no title documents, were found by the sheriff to be jointly held by defendant and his wife, and therefore, immune

from execution. This court, by an opinion and order affirmed the sheriff's determination. See *Bloomsburg Bank-Columbia Trust Co. v. Harvey R. Oman,* no. 5 of 1982 E.D., no. 45 of 1982 J.D. order dated December 9, 1982.

In what has been designated phase two of this action, plaintiff bank discovered other farm equipment and requested that the sheriff levy upon those items, as set forth below:

> One Ford plow, Model 152-8
> One Pittsburgh harrow
> One Ford tractor 8700
> One Sperry New Holland chopper
> One Pittsburgh disk
> One New Holland haywagon

The sheriff levied on the above items in due course, and defendant objected by interpleader. On September 14, 1982, the sheriff concluded that the subject items were not jointly owned by defendant, Harvey R. Oman and his wife, but were the property of Harvey R. Oman alone, and thus subject to execution by plaintiff bank.

Defendant objected to the sheriff's determination, and the issue came before this court. We found that the items in question were jointly owned and held by defendant and his wife, Mary P. Oman. See *Bloomsburg Bank-Columbia Trust Co. v. Harvey R. Oman,* 5 of 1982 E.D., 45 of 1982 J.D. Opinion and Order dated June 6, 1984.

Plaintiff has filed the instant motion for post-trial relief.

In its motion plaintiff contends that the court erred in concluding that the presumption of ownership by the entireties includes the farm equipment in this case.

Plaintiff's argument on this issue focuses upon the meaning and applicability of the decision in *DiFlorido v. DiFlorido*, 459 Pa. 641, 331 A.2d 174 (1975). In *DiFlorido*, the Supreme Court of Pennsylvania held that the common-law presumption of a husband's ownership is no longer effective, and that henceforth the presumption is that ownership is in the husband and wife in the entireties, unless the party contesting this status could overcome that presumption of joint ownership.

Plaintiff, while admitting that the court in *DiFlorido* did not limit its ruling to a presumption of joint ownership of household goods, argues that we should have applied the *DiFlorido* holding in the instant case and assume that the Supreme Court had limited its holding to apply only to household goods.

In our opinion, the Supreme Court did not intend to restrict its ruling simply to household goods. If the Supreme Court intended to so limit its ruling, it should and would have said so. One need only to look to the policy of law that served as the underlying rationale for the *DiFlorido* decision, to wit, the Pennsylvania Equal Rights Amendment and its supporting policies.

We find the basis of the Supreme Court's ruling in *DiFlorido*, supra, to be an expanding principle rather than a narrow holding. Such is evidenced by the Superior Court decision of *Swidzinski v. Schultz*, 342 Pa. Super. 422, 493 A.2d 93 (1985) in which the court stated:

"The amendment (Equal Rights Amendment) was intended to equalize the benefits and burdens between the sexes, so that gender alone could no longer be an exclusive method of classifications. *DiFlorido v. DiFlorido*, 459 Pa. 641, 331 A.2d 174 (1975); *Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851 (1974); Opinion Attorney General, no. 62.

Thus it was not meant merely to benefit women and has already been applied to a variety of personal and economic rights and responsibilities: reimbursement for public defender services, *United States v. O'Neil,* 478 F. Supp. 852 (E.D. Pa., 1979); sentencing, *Commonwealth v. Saunders,* 459 Pa. 677, 331 A.2d 193 (1975); eligibility for parole, *Commonwealth v. Butler,* supra; child custody, *Commonwealth ex. rel. Weber v. Weber,* 272 Pa. Super. 88, 414 A.2d 682 (1979); consent to adoption of illegitimate child, *Adoption of Walker,* 468 Pa. 165, 360 A.2d 603 (1976); child support, *Straub v. Tyahla,* 274 Pa. Super. 411, 418 A.2d 472 (1980); support of illegitimate children, *Commonwealth v. Rebovich,* 267 Pa. Super. 254, 406 A.2d 791 (1979); alimony pendente lite, counsel fees and expenses in divorce proceedings, *Henderson v. Henderson,* 458 Pa. 97 327 A.2d 60 (1974); recovery for loss of consortium, *Hopkins v. Blanco,* 224 Pa. Super. 116, 302 A.2d 855 (1973), aff'd 457 Pa. 90, 320 A.2d 139 (1974); employee disability benefits, *Lukus v. Westinghouse Electric Corp.,* 276 Pa. Super. 232, 419 A.2d 431 (1980); and motor vehicle insurance, *Com. Human Relations Commission v. Transit Casualty Insurance Co.,* 478 Pa. 430 387 A.2d 58 (1978). . . ."

In the case of *Rollman Estate,* 71 D.&C.2d 6 (1975) the court stated:

"With the passage of the Equal Rights Amendment, this court has striven to insure the equality of rights under the law and to eliminate sex as a basis for distinction." (quoting *DiFlorido,* supra).

The court in *Rollman's Estate,* supra, in a similar vein added:

"The strivings of the court, the recognition of vestiges of the past and the disregard of former doctrines embodying concepts that have since been discredited have resulted in some changes which dec-

ades ago would probably have been deemed unthinkable by many. It is fully apparent that by constitutional mandate and judicial application, the principle of equality of sexes supersedes doctrines which heretofore had been deemed to be implicit in the marital relationship between husband and wife. The presumption of 'husband's ownership' is no longer applicable, (*DiFlorido*) and in its place is a presumption of tenacy by entireties . . . 71 D.&C.2d at 9, 10.

Plaintiff further argues that the applicability of *DiFlorido* should be limited due to the Superior Court's decision in *Hengst v. Hengst,* 269 Pa. Super. 110, 409 A.2d 88 (1980).

In *Hengst,* supra, the Superior Court stated:

"We find that *DiFlorido* is nondispositive of the instant controversy. Here, at issue, are not household goods and furnishings but, rather, title to, or ownership of, a Thrift Plan, which was properly categorized by the lower court as a chose inaction." 409 A.2d at 91.

However, the *Hengst* ruling by the Superior Court was reversed by the Supreme Court of Pennsylvania in *Hengst v. Hengst,* 491 Pa. 120, 420 A.2d 370 (1980). We note with some concern that the reversal by the Supreme Court filed several years ago was not mentioned in plaintiff's brief.

In *Hengst,* supra, the husband arranged for certain monies to be deducted from his earnings to be placed in a thrift plan in his name alone. The husband and wife dealt with the plan as a joint plan, even though it was listed in the husband's name only. The Superior Court found that the thrift plan remained the property of the husband only. However, the Supreme Court, in reversing the Superior Court, found that the thrift plan was joint property and belonged to both husband and wife.

In the instant case, the record reveals that defendant and his wife, Mary Oman, had operated a service station in joint names. Mary Oman participated in the operation of the station in a meaningful and active manner. She pumped gasoline, prepared bills, handled phone calls, ran errands, obtained parts, set appointments, kept the books and managed all tax matters of the business. Mary Oman worked at the station eight hours per day, six days per week.

All the money generated by the service station business was deposited into a joint account. That joint account was subsequently transferred to Mary Oman's name and later established as a joint account for the farm operation.

Mary Oman's participation and involvement in the farming operation were not merely passive or inactive. Rather, she performed an active, vital part in the work, business and operation of the farm. She fed and watered the animals, hauled straw, handled the bookwork, including payment of bills and preparation of tax matters.

Defendant and his wife testified that the farm operation was a joint operation between husband and wife. All of the money generated and used for the farm operation was processed through two farm accounts. The accounts were utilized to pay bills and operating expenses of the farm. Therefore, the mere fact that defendant was not accompanied by his wife when he purchased various items of equipment does not overcome the presumption that the equipment was jointly owned. See *DiFlorido,* supra, (holding it was not dispositive of the issue of ownership which spouse purchased any particular item of household goods or furnishings). Accordingly, the fact that only defendant's name appeared on some documents signed when the equipment was pur-

chased does not prove that defendant's wife does not own the equipment jointly with her husband. It may be noted further that the various documents signed by Harvey Oman, (when there was a designation) designated as "buyer," Harvey Oman, not "owner."

Plaintiff next contends that, even if there is a presumption of a tenancy by the entireties, plaintiff overcame that presumption because Harvey Oman alone granted a security interest in the equipment purchased. However, such does not overcome the presumption of joint ownership.

The record reveals that defendant purchased the farm equipment for a jointly owned farming operation. The equipment was paid for either out of the joint farming account, or Mary Oman's individual account. Additionally, down payment on some of the equipment was made with other jointly owned farm equipment, all of which tends to reflect joint ownership.

The mere execution of a finance statement does not create sole ownership in Harvey Oman, or any other individual under these circumstances. In short, banks would be well advised to examine fully the details of such transactions and be prepared to assume the risks inherent in factual patterns such as this case when processing a one-signature loan.

Finally, plaintiff bank raises the issue of equitable estoppel, contending that Mary Oman should be equitably estopped from asserting an ownership interest in the farm equipment. Plaintiff, in support of the applicability of the theory of equitable estoppel cites *Taylor v. Kaufold,* 379 Pa. 191, 108 A.2d 713 (1954).

In *Taylor,* supra, defendant husband was involved in various deals relating to property, i.e. a tavern held in his name alone.

Unlike the instant case in which defendant husband and his wife are both actively involved in the work and responsibility of operating the business, in *Taylor,* the husband sold the tavern property and deposited the proceeds into a joint account with his wife. Subsequently, defendant husband and his wife purchased another property, which they titled in joint names.

The court in *Taylor* found that defendant husband had committed a fraud and estopped the wife from asserting a defense because she had not been a part of the business which was involved in the fraud. In essence, the *Taylor* court would not permit the wife to sit back and partake of the profits in what had been determined to be a fraudulent situation. In the instant case, defendant's wife did not passively sit back and seek to enjoy the profits of a fraudulent deal involving a business in which she was not an active participant. Rather, in the instant case, Mary Oman was a working partner and joint owner of the service station and the farm. Furthermore, no issue of fraud has been alleged or proven in this case. Unlike the facts in *Taylor,* supra, both defendant and his wife in the instant case considered and treated the service station, farm operation and farm equipment as jointly owned.

Plaintiff has not proven the essential elements of equitable estoppel, i.e. that there was any misrepresentation by defendant or his wife, or any justifiable reliance on plaintiff's part that sole ownership by defendant induced plaintiff's loan. We therefore affirm our opinion of June 6, 1984, which found that the equipment under consideration to be jointly owned and deny plaintiff's objections.

Therefore, plaintiff bank is barred from executing upon the jointly owned farm equipment to satisfy the debt owed solely by defendant, Harvey Oman.

## ORDER

And now, this March 17, 1986, we dismiss plaintiff's motion for post-trial relief.