**Penn's Woods Girl Scout Council, Inc.**
**v. Klinetob et al.**

*Frank G. Harrison, of Rosenn, Jenkins & Greenwald,* for plaintiff.

*Robert E. Bull,* for defendants.

KREISHER, P.J., January 13, 1971.—

## 1. STATEMENT OF THE ISSUES

Plaintiff grantees of a qualified written easement dated January 20, 1959, as modified June 2, 1960, filed a complaint in equity on December 28, 1970, seeking to invoke equitable relief to a present threatened interference with their use of said easement as set forth in a letter from defendants' attorney dated September 30, 1970. Defendant grantors filed answer on January 5, 1970, admitting the express grant of a 20-foot right-of-way over their land. However, under the heading of "New Matter" they allege plaintiffs failed to comply with their agreement to post and patrol their land against hunting on certain specified days, failed to keep the gate locked during the winter months and while working the right-of-way with heavy equipment during the summer of 1970 went over the boundary lines at certain places, therefore, said alleged breaches terminated plaintiff's rights and they are not entitled to equitable relief.

## 2. CLOSELY CONDENSED CHRONOLOGICAL STATEMENT

The case being at issue, a hearing was held in open court on January 5, 1971. The admitted allegations of the complaint were read into evidence and the exhibits admitted. The original grant dated January 20, 1959, was made to the Columbia County Council of Girl Scouts, Inc., and provided, inter alia, "The free and uninterrupted use, liberty and privilege of and passage in and along a certain roadway twenty feet in width" bounded and described by metes and bounds. The description follows the center line

of the right-of-way as shown on the engineer's draft of survey dated January 8, 1959. Following the description, it is provided:

"Together with free ingress, egress, and regress to and for the said Columbia County Council of Girl Scouts, Inc., their guests, employees, occupiers, or possessors of the said premises which the Columbia County Council of Girl Scouts, Inc., proposes to purchase from Mary E. A. Adams, hereinafter referred to as the dominant land, at all times and seasons forever hereafter, so long as the dominent land is used as a camp site for the Girl Scouts of America, into, along, upon and out of the said roadway in common with the Grantors, their heirs and assigns, tenants or occupiers, of the said messuage and ground adjacent to the said roadway.

"In further consideration, the Grantee agrees to prohibit hunting upon the dominant land and to keep the same posted to that effect.

"The Grantee further agrees to install a gate at the entrance to the said right-of-way on the east side of the state highway leading to Jonestown. It is agreed to by the parties hereto that the said gate shall remain locked except during the regular camping season.

"The Grantee further agrees to install one drainage pipe across the said right-of-way at the place to be determined by Goodwin D. Klinetob, one of the Grantors hereof. Said drainage pipe to be at a sufficient depth and of sufficient size to direct the drainage of water away from the home of Goodwin D. Klinetob and into a now existing swamp.

"To have and to hold all and singular the privileges aforesaid to them, the said Columbia County Council of Girl Scouts, Inc., to the only proper use and behoof of them, the said Columbia County Council of Girl Scouts, Inc., forever, so long as the dominant land is

used as a camp-site for the Girl Scouts of America, in common with them, the said Goodwin D. Klinetob, Miltona B. Klinetob, H. R. Hess and Anna Hess, their heirs and assigns, as aforesaid."

On June 2, 1960, the parties executed another agreement wherein the first agreement is identified, after which it is stated:

"(1) The parties of the first part covenant, promise and agree to remove a chain installed across the aforesaid right-of-way and to remove certain boulder and stones placed therein.

"(2) The parties further agree that in addition to prohibiting hunting upon the premises and keeping same posted to that effect, that the said party of the second part shall keep its premises patrolled as against hunters by a competent, reliable watchman on the opening day of deer season, on all Saturdays of the antler deer season and during the entire doe season."

Camp Louise was established on a 178-acre farm; the right-of-way was constructed with three drain pipes at the grantors' direction instead of one, and the regular camp season started June 14th and ended about Labor Day. In 1963, the Columbia County Council merged with the Penn's Woods Council, Inc., of Luzerne County. Thereafter, some of the camp buildings were winterized, a permanent caretaker with his family was housed on the camp site and the camp season became year round, with some adult occupancy during the week. However, scout occupancy during the school term is generally confined to weekends and holidays. The matter progressed without incident until the 1969 deer season, when the grantors were unable to locate a patrolman on one occasion and observed at least one nonresident deer hunter on the camp property who told him two of his companions were also hunting on the property, which incidentally

adjoins State game lands open to hunting, so the said observation comes as no particular surprise to the court.

In the late summer of 1970, the council employed a local heavy equipment operator to manicure the way which was in need of repairs. While working on the drainage ditches, he got over the line in spots and was ordered off the job by the grantor, so he moved to the scout land and finished the job.

A letter dated September 30, 1970, which is self-explanatory, initiated a series of conferences for compromise without success; hence, this suit. Said letter reads, as follows:

"Dear Mrs. Rosenn:

"Goodwin Klinetob is in my office at the present time. He has related numerous incidents of violation of the original agreement between the Girl Scout Council and himself as well as the supplemental agreements. Very recently a contractor engaged by your Council attempted to widen the road beyond the 20 foot right-of-way agreement. The contractor was quite embarrassed when Mr. Klinetob spoke to him and related that he had no knowledge that the property did not belong to the Council. I am sure you also are aware that there have been numerous violations relating to the protection of the land by patrols which was agreed upon by the Council. You also recall that a chain or gate was erected and the conditions were stipulated that this device would be secured at all times except during camping season. This has been breached numerous times.

"Mr. Klinetob after consideration of all the above violations and the harassment which he has endured resulting therefrom has now elected that said agreement should be cancelled for violations by the Council or its representatives and has directed that I so notify you.

"Therefore, please consider this letter your formal notice that said agreement and supplements thereto relating to this right of way have been violated and voided by the Council action and that same are now discontinued and considered lapsed and void by Mr. Klinetob. In order that you might be able to arrange for other suitable entrance, he has authorized me to tell you that ninety days from the date of this letter the right-of-way across his land will be blocked and entrance prohibited. Please make arrangements to comply with this decision within this time limit."

The camp director of the council and the resident caretaker testified to their concerted, serious, bona fide efforts to comply with the provisions of the agreements. However, they admit the gate is unlocked because of the frequent use of the road by the caretaker who has a child of school age, and by the campers who now use the site throughout the year.

Defendant-husband testified to the matters mentioned in said letter and endeavored to show an alternate route over an old road or fire line across the State game lands leading to a different public road which could be traveled by the use of a four-wheel-drive jeep if the State gave them permission to cross the State game lands.

## 3. DISCUSSION AND CONCLUSIONS OF LAW

The exhibits in this case clearly reveal an express, absolute vested grant of a right-of-way which, like a fee simple deed, cannot be cut down by a contemporaneous or later collateral agreement.

It is well settled that equity will restrain a threatened interference of a right without prior adjudication at law where the right is clear and there is no serious dispute as to any of the material facts. The rights and liabilities of the parties are determined the same as

any other contract by the terms thereof, and each party has the right to insist that the terms be complied with and that the rights and duties remain throughout the years substantially as they were when they originally accrued: Minard Run Oil Company v. Pennzoil Company, 419 Pa. 334, 337.

The grant is construed in favor of the grantees to include everything reasonably necessary to the full enjoyment thereof. Forfeiture is not favored by the law and the burden of proving a termination is placed upon the grantor: Merrill v. Manufacturers Light and Heat Company, 409 Pa. 68.

The owner of an easement has not only the right, but also the duty, to keep a right-of-way in good repair; otherwise, there might be liability to third persons for the failure to fulfill this duty: Reed et al. v. Allegheny County et al., 330 Pa. 300.

Where one party has a right-of-way through land of another to a public road, the latter is not justified in closing it by the fact that there is another way to such road. Manbeck v. Jones, 190 Pa. 171.

Applying the foregoing abstract principles of law to the clear facts of this case, we are bound to conclude defendant has failed to meet his burden of proving either a forfeiture or a termination of plaintiffs' vested easement.

The words of inheritance used in the instrument creating the right-of-way passed the right upon merger to the present plaintiff by operation of law. Furthermore, generally speaking, an easement once established cannot be divested except with the same formality and finality by which it came into existence: Simplex Precast Industries, Inc. v. Biehl, 395 Pa. 105. This case is also authority for the principle above mentioned that a grantor of an express grant cannot derogate from or cut down the rights already granted.

The remaining issue involves defendants' rights under the terms of the bilateral instruments. These rights must be determined, as stated above, in accordance with general contract law. Therefore, defendant may sue for damages arising from any breach of the contracted obligations.

His testimony as to the misuser of the way by the road repairman going beyond the boundary lines indicated nominal damages as most. However, grantee is liable for misuser, and it then becomes a question of fact for determination by a jury: Becker v. Lebanon & Myerstown Street Railway, 195 Pa. 502.

The same is true for the failure to post and patrol the camp property. However, the grantor would have the burden of proving the extent of the damage for this breach, if it occurred, since it was denied and, at first blush, these elements appear to us to be of a highly speculative nature and most difficult of proof.

The last issue arises from a sentence in the original agreement, which reads, as follows:

"The grantee further agrees to install a gate at the entrance to the said right-of-way on the east side of the right-of-way leading to Jonestown. It is agreed to by the parties hereto that said gate shall remain locked except during the regular camping season."

In P.L.E., Elements, section 31, it is stated:

"Misuser. The holder of an easement may enter thereon and do any act necessary for the proper use of the easement so long as these acts do not needlessly increase the burden on the servient tenement or inflict damage upon other landowners or others entitled to use the easement. The holder of the easement may be liable to the owner of the servient estate for negligent acts, for changing the physical attributes of the property, or for unauthorized use, it being a question of fact for the court or jury to determine whether a

use is unreasonable and improper. The remedy for an unauthorized use of an easement is by action, rather than obstruction of the easement, and the holder of an easement may not be held liable in damages for the peaceable removal of an unauthorized obstruction. He may be held liable, however, for a trespass committed in avoiding an obstruction, or, where the owner of a servient estate is justified in maintaining a gate, the owner of an easement may be held liable for failing to close the gate after using it."

The case cited in the footnotes as authority for the last sentence of the above quotation is an infamous case I have lived with as long as I can remember. It is the 1911 Columbia County case of Helwig v. Miller, 47 Pa. Superior Ct. 171, which engendered a lifelong feud between neighbor farmers and caused my father, who was then the young advocate for the losing appellant, not only many hours of tribulation but also the occasion amply justified in his opinion to reprove and flay the opinion of the court. An ancient right-of-way from farm buildings on the north to the public road on the south bisected a field of a neighbor which adjoined the public road. For some time prior to 1895 the neighbor's field was fenced along the highway and removal bars were maintained across the right-of-way in line with the fence. The posts and bars were then removed and remained down until 1908 when the neighbor erected a swinging gate after the farmer on the north refused to close the gate each time he used the right-of-way, and an equity action was instituted to compel him to do so. The court granted the relief. Since the lands were used for agricultural purposes and the pasture of cattle it would work a less hardship on the farmer using the road only a few times a week with his horse and buggy to stop and close the gate

than if left open it would cause the owner of the land and the public to be rounding up stray cattle. Therefore the court held the admitted interference with the use of the way to be not unreasonable under the circumstances.

The court disposed of the rights of invitees on the admission in the pleading that the easement was but for a private right-of-way, stating, "such strangers had no right in themselves to the use of this way." My father always contended this was not and is not now the law of Pennsylvania. The court's opinion did not even mention the duty of the landowner in the east "to fence to keep in" as contrasted to the duty of the landowner in the west "to fence to keep out." There was nothing to prevent the owner of the pasture to fence the right-of-way which was his duty if he wished to confine his cattle.

In any event, this horse and buggy days case is not controlling in the case at bar because the right-of-way was not based upon an express grant, but rather a presumed grant by operation of law and dealt with farm land and not mountain land. Incidentally, the right-of-way and fields are still being used for the same purposes today. However, the said gate has long since disappeared as the succeeding owner of the servient fields has fenced the said right-of-way so that a gate is no longer necessary.

In the present case, we are bound by the terms of the grant and the intention of the parties. Plaintiff agreed to keep the gate locked except during the regular camping season. When the camp was first opened, there was no resident caretaker and the camp use was confined to the summer months.

Plaintiff now contends the regular camping season is a yearly proposition, and the demand to keep the gate locked during the winter months is an unreasonable burden under the present circumstances.

In the case of Mint Realty Company v. Wanamaker, 231 Pa. 277, the cornice of the Wanamaker Store extended more than seven feet above Juniper Street. The owner of the land across the street sought an injunction on the grounds it was deprived of light and air. The court refused to grant equitable relief in the absence of evidence of special injury, either substantial or irreparable, holding the controversy was a question of fact in a suit for damages, and stated, "Courts of equity are not instructed in general to enforce abstract legal rights. There must be substantial irreparable injury attempted."

Likewise, in the present proceedings, there is no evidence of substantial irreparable injury and the court is in no position to rule on the matter. We conclude defendant is relegated to the law side of the court to have any and all alleged breaches of the contract decided by a jury after trial of the case on the theory of liability for the breach of the contract. Therefore, we conclude the court has jurisdiction of the cause and the parties. Plaintiff is entitled to the equitable relief requested and defendants are not entitled to any damages in this proceeding, since no claim for damages is made in the pleadings and only nominal damages appear from the testimony.

## DECREE NISI

And now, to wit, January 13, 1971, it is ordered, adjudged and decreed as follows:

(1) Plaintiff is entitled to equitable relief and defendants are enjoined and restrained from interfering in any manner with the free use of the right-of-way as described by metes and bounds in the complaint.

(2) Defendants are relegated to the law side of the court for a determination of their rights for the alleged breach of the contract.

(3) Each party to the proceedings shall pay its own costs.

(4) The prothonotary shall give prompt notice of the entry of this adjudication and decree nisi through the attorneys of record. If no objections or exceptions are filed within 20 days after notice thereof, this decree nisi shall be entered by the prothonotary upon praecipe as the final decree.